FILED
CHARLOTTE, NC

MAR 21 2012

US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12cv141

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., <br><br> Plaintiff, <br><br> Vs. <br><br> BIG JIM'S MUFFLER SHOP, LLC; JAMES R. BUCKLIN; and LAURIE A. BUCKLIN, <br><br> Defendants. | ) ) ) ) ) ) **PRELIMINARY INJUNCTION** ) **ORDER** ) ) ) ) ) ) ) ) |

**THIS MATTER** is before the court on plaintiff's Verified Complaint and Motion for a Preliminary Injunction (#2). In accordance with Rule 65(a)(1), Federal Rules of Civil Procedure, a Preliminary Injunction Hearing was noticed for March 21, 2012, at 11 a.m., and plaintiff was directed to serve a copy of such Notice on defendants. Defendants did not appear. The court heard plaintiff's oral argument on the instant motion.

For the reasons that follow, this court will grant plaintiff Meineke Car Care Centers, Inc's ("Meineke") motion for a preliminary injunction enjoining defendant Big Jim's Muffler Shop, LLC, from continued use of the Meineke trademark and enjoining such defendant's continued breach of a covenant not to compete. The court has stayed consideration of the motion as to defendants James R. Bucklin and Laurie A. Bucklin pending determination by the United States Bankruptcy Court for the District of Arizona as to whether the automatic stay has been lifted as to such defendants.

## FACTS

This motion arises out of defendants' alleged refusal to abide by the post-termination obligations contained in their Franchise Agreement with Meineke and violations of the *Lanham Act*. The following facts and determinations are made without prejudice as to the individual defendants later contesting such in another hearing once the Bankruptcy Court has made its determination.

On June 7, 2006, Meineke entered into a Meineke Franchise and Trademark Agreement with Defendant Big Jim's Muffler Shop, LLC ("Defendant Big Jim's) which granted it the right to operate a Meineke Center located at 2230 West Bell Road, Phoenix, Arizona 85023 ("Center No. 185"). Verified Complaint ¶ 20. Defendant James R. Bucklin ("Defendant Jim Bucklin") and Defendant Laurie A. Bucklin ("Defendant Laurie Bucklin") signed the Franchise Agreement as Guarantors, personally guaranteeing to Meineke that Defendant Big Jim's would pay and perform all of its obligations under the Franchise Agreement. Verified Complaint ¶ 21. Defendants Jim and Laurie Bucklin agreed to be personally bound by and liable for any breach of the Franchise Agreement. Id.

By signing the Franchise Agreement and Assignment, defendants acquired the right to use the Meineke Marks and received from Meineke proprietary information and know-how concerning, among other things, training manuals, operations manuals and promotional techniques. Verified Complaint ¶ 22 and at Ex. 1, Art. 10, 11. Defendants agreed to submit accurate weekly business reports showing the gross revenues generated by their Meineke franchised business and to pay a percentage of those gross revenues on a weekly basis in the form of franchise fees and advertising contributions. Verified Complaint ¶ 23. Defendants acknowledged in the Franchise Agreement that various information revealed to them by Meineke concerning its unique system for the establishment and operation of undercar repair centers is proprietary and confidential. Verified Complaint at Ex. 1, Article 11. They also acknowledged and agreed that, as a result of their regular and continuing access to this confidential and proprietary information, it would be impossible for them to engage in the same business activities following their termination without using Meineke's confidential and proprietary information. Verified Complaint at Ex. 1, Article 11.4. In Article 11 of the Franchise Agreement, defendants agreed that for a period of one (1) year after leaving Meineke, they would not "directly or indirectly (such as through corporations or other entities owned or controlled by them), own a legal or beneficial interest in, manage, operate or consult with": any business performing exhaust, brakes, or shocks and struts services at the premises of former Center No. 185 or within six (6) miles of former Center No. 185 or within six (6) miles of any other Meineke Center

existing as of the date that Center No. 185's license terminated. Verified Complaint at Ex. 1, Article 11.4.

Defendants' Franchise Agreement with Meineke was not due to expire until June 9, 2021. Verified Complaint ¶ 25. But on February 25, 2011, plaintiff alleges that defendants abandoned their Center, with more than ten years remaining on their 15-year contract with Meineke. Verified Complaint ¶ 25. Meineke then terminated defendants' franchise license for Center No. 185, effective March 8, 2011. Verified Complaint ¶ 26.

Since the termination of the Franchise Agreement, plaintiff avers that defendants have operated a competing automotive repair business within one mile of their former authorized Meineke Center No. 185. Verified Complaint ¶ 29 and at Exhibits 3-4. Plaintiff avers that defendants are unfairly competing with Meineke and are threatening Meineke's goodwill and the integrity of the entire Meineke system.

Although Meineke has instituted arbitration to enforce defendants' post-termination covenants, Meineke's has filed a Motion for a Preliminary Injunction which asks the court to protect Meineke from irreparable injury that it contends it is already suffering as a result of defendants' conduct. The relief sought herein is identical to relief that defendants agreed to when they signed their contract with Meineke. Verified Complaint at Ex. 1, Article 17.

## ANALYSIS

### I. Standard for Granting Preliminary Injunction

Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003). A plaintiff seeking a preliminary injunction or temporary restraining order ("TRO") must give notice to the opposing party under Federal Rule of Civil Procedure 65 and establish all four of the following elements: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of

preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Moore v. Kempthorne, 465 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("[t]he standard for granting either a TRO or a preliminary injunction is the same"). The most recent Supreme Court test was adopted by the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir. 2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

In Winter, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375. Meineke has established all four requirements needed to obtain a preliminary injunction for both claims.

## II. Discussion

As a preliminary matter, that court notes that the Affidavits of Service (#s 7, 8, & 9) indicate service of this court's Order setting the hearing on the Motion for Preliminary Injunction more than a week in advance of the hearing.

### A. Likelihood of Success on the Merits

Article 11.4 of Defendants' Franchise Agreement provides that, upon termination of the Franchise Agreement and for a period of one (1) year thereafter, defendants will not "directly or indirectly (such as through corporations or other entities owned or controlled by them), own a legal or beneficial interest in, manage, operate or consult with": any business performing exhaust, brakes, or shocks and struts services at the premises of former Center No. 185 or within six (6) miles of former Center No. 185 or within six (6) miles of any other Meineke Center existing as of the date that Center 185 terminated. Nothing contained in the Franchise Agreement restricts defendants' ability to own or operate an automobile repair Center that sells products and/or services other than the specific automobile exhaust, brake, and shocks and struts services that they sold while they were

-4-

authorized Meineke franchisees. Likewise, nothing prevents defendants from starting their own automotive repair business outside of the 6-mile covenanted area.

In order to demonstrate the requisite likelihood of success on the merits, Meineke must show that it is likely to be able to prove that the non-competition agreement is valid and enforceable. In conjunction with the sale of a business, a covenant not to compete is enforceable in North Carolina if: 1) it is reasonably necessary to protect the legitimate interests of the person seeking its enforcement; 2) it is reasonable with respect to both time and territory; and 3) it does not interfere with the interest of the public. Bicycle Transit Authority, Inc. v. Bell, 314 N.C. 219, 226 (1985); Jewel Box Stores Corp. v. Morrow, 272 N.C. 659, 662-63 (1968).

### 1.    Reasonably Necessary to Protect Legitimate Interests

Meineke satisfies the first prong of the test because its non-compete covenant is necessary to protect multiple valid business interests of Meineke. At the time that a franchisee purchases his franchise, he is on notice that in exchange for his being able to receive the benefits of participating in the Meineke system, he is expected to abide by the in-term and post termination covenants not to compete. In Article 11, defendants specifically acknowledged the substantial value of the confidential and proprietary information that they received from Meineke under the Franchise Agreement. If a franchisee is no longer a member of the Meineke chain, then permitting him to compete in the territory where his Meineke franchise operated directly against an existing or new franchisee would enable him to use the information he acquired from Meineke to direct business away from Meineke. In North Carolina, courts have found that these very interests are valid interests that warrant protection by use of a non-compete covenant.

### 2.    Time and Territory

The covenant is also reasonable as to time and territory, which satisfies the second prong of the sale of a business context test. The term is only for one year. North Carolina's courts regularly uphold covenants for periods in excess of one year. Triangle Leasing Co., Inc. v. McMahon, 327 N.C. 224, 229 (1990) (two-year period upheld). In addition, covenants in excess of

one year that are contained in franchise agreements have been routinely upheld by other federal courts. Grease Monkey Int'l, Inc. v. Watkins, 808 F. Supp. 111, 118, 120 (D. Conn. 1992) (two-year term upheld).

In determining whether the territorial limitation is reasonable, courts look to whether the limitation is reasonably required to secure the protection of the franchisor's legitimate business interests. Triangle Leasing Co., 327 N.C. at 228. The covenant at issue here is reasonable because it does no more than necessary to protect Meineke from terminated franchisees who use the very information provided to them by Meineke in order to sell the very products and services that Meineke has developed in a particular market, and that consumers in that market have come to associate with Meineke. This covenant is necessary to allow Meineke: (1) to protect its confidential and proprietary information and its customer goodwill (customer goodwill is for the trademark and not the specific business), Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 806 (3rd Cir. 1998); (2) to protect its authorized franchisees in the same area as defendants from unfair competition with an ex-franchisee who has learned all of the confidential practices and procedures that make Meineke Centers successful in the marketplace; and (3) to ensure its ability to secure another franchisee at or near the location formerly served by defendants.

A franchise itself is a legitimate interest sufficient to warrant the need of a covenant not to compete for protection. Outdoor Lighting Perspectives Franchising, Inc. v. Home Amenities, Inc., No. 3:11-cv-0567, 2012 WL 137808, at *3 (W.D.N.C. Jan. 18, 2012). This court recognizes, as have other courts, that the basic product the franchisor has to sell is the franchise itself, which typically includes a detailed system of doing business not readily available through independent means. In exchange for securing those benefits from the franchise system, the franchisee agrees to the covenant not to compete effective upon termination of the franchise license.

The territorial restriction at issue in this case is six miles from Center No. 185. North Carolina courts have enforced covenants not to compete with far broader territorial restrictions than those at issue in this case. Forrest Paschal Mach. Co. v. Milholen, 27 N.C. App. 678, 687 (1975)

(350 miles territorial restriction enforced). Clearly, the six-mile restriction in this case in light of the interests plaintiff seeks to protect.

### 3. The Public Interest

Meineke satisfies the third prong of the sale of a business context test because the enforcement of this covenant does not violate public policy. North Carolina's courts have often held that covenants not to compete significantly broader than the one here do not violate public policy. Triangle Leasing Co., Inc., supra.

### 4. Conclusion as to Likelihood of Success on the Merits

Meineke has established that it is likely to succeed on the merits of its claim for enforcing the covenant not to compete.

### B. Irreparable harm

As defendants acknowledged in the Franchise Agreement, Meineke provided them with valuable knowledge, training and confidential and proprietary information enabling them to establish and operate an automotive repair center throughout the term of their relationship with Meineke. Additionally, defendants acknowledged that they would not be in a position to operate a competing exhaust, brake, and shocks and struts repair center following their termination by Meineke without taking advantage of Meineke's know-how and training.

In the wake of Meineke's termination of defendants' franchise for cause, one of Meineke's top priorities is to re-establish an authorized Meineke Center in order to retain its goodwill and market share in the market that was formerly served by Defendants. Verified Complaint ¶34. Permitting Defendants now to violate the covenant not to compete and to use the Meineke know-how and training to establish their own, competing automotive repair center in the same service area would result in irreparable harm to Meineke as it would deprive Meineke of the customers and the market that it has established over the course of its franchise relationship with defendants, and would thus make it difficult if not impossible for Meineke to re-establish an authorized, reputable Meineke franchise in the same area. Outdoor Lighting Perspectives Franchising, 2012 WL 137808, at *2. It

-7-

also follows that absent enforcement, permitting these defendants to ignore and violate their contractually agreed upon covenant not to compete would adversely affect the value of legitimate, law abiding Meineke franchisees, thus harming the Meineke system as a whole. As Judge Voorhees stated in Meineke Discount Muffler Shops, Inc. v. Vaghani, No. 3:99CV255-V, Order and Preliminary Injunction, at 3-4 (W.D.N.C. Sept. 22, 1999), "[a]llowing Defendant to operate a competing automotive business in violation of this covenant allows Defendant to compete unfairly with Plaintiff, thereby causing irreparable harm." Such would have a chilling effect on potential buyers of Meineke franchises in the covenanted area from purchasing a Meineke franchise, thus reducing the value of those franchises.

The court concludes that plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

C.   **Balance of the Equities**

While there is no doubt that defendants would be harmed by the entry of a preliminary injunction, any harm resulting to defendants from the requested injunction would be harm they well should have anticipated. Defendants specifically agreed to the covenant at the very outset of their franchise relationship with Meineke.

If the court were to permit defendants to continue with a business that violates the agreement, defendants would unfairly benefit from the confidential marketing and operational information that Meineke previously provided to them as part of the parties' franchise relationship. Meineke's covenant against competition only prohibits defendants from selling a limited and specific set of products and services within the covenanted area and term, not all automobile repair products and services.

Accordingly, the significant harm that would result to Meineke and its authorized franchisees if defendants were allowed to violate this covenant outweighs any harm to Defendants from enforcement of this agreed upon covenant.

### D. Public Interest

The public derives substantial benefit from the services provided by those who, like Meineke, train entrepreneurs and develop new businesses. Communities benefit from the variety, competition and quality of products and services made available to them through the efforts of franchisors such as Meineke. If franchisors such as Meineke are unable to protect themselves and their systems from those who would take unfair advantage of the benefits of exposure to a franchised system, Meineke and other franchisors may be forced to alter their way of doing business, to the detriment of the consuming public. In addition, if this covenant is not enforced, defendants will continue to mislead the public, unfairly compete with Meineke's authorized area franchisees, unfairly capitalize on Meineke's trade secrets and unfairly take advantage of Meineke's goodwill. Thus, the public interest will be served by entry of a preliminary injunction.

### III. Conclusion

Because Meineke has established all four elements needed to obtain a preliminary injunction, this court will grant Meineke's motion for a preliminary injunction. Defendants shall immediately comply with this Order, and the injunction shall run one year from the date defendants begin compliance. Baskin-Robbins, Inc., v. Golde, No. 5:99-cv-102, 2000 WL 35536665 (E.D.N.C. May 25, 2000) (Britt, J.) (Holding that injunction begins with date of court order because "The court believes that, to allow defendants to ignore their covenant not to compete and then to escape the consequences of that covenant while plaintiffs attempt to enforce it through the judicial process, would provide a windfall to defendants and unnecessarily penalize plaintiffs.")

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for a Preliminary Injunction (#2) is **GRANTED** and defendant **BIG JIM'S MUFFLER SHOP, LLC**, and all persons and entities in active concert or participation with them who receive actual notice of such Preliminary Injunction, shall:

**CEASE** and **REFRAIN**, for a period of one year from the date they begin

compliance with such covenant not to compete, from directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with: any business performing exhaust, brakes, or shocks and struts services at the premises of former Center No. 185 or within six (6) miles of former Center No. 185 (including Defendants' current competing business located at 2402 W. Phelps Road, Phoenix, Arizona 85023) or within six (6) miles of any other Meineke Center existing as of the date that Center 185 terminated.

Such injunction shall run one year from the date defendant **BIG JIM'S MUFFLER SHOP, LLC** begins compliance with such injunction.

Signed: March 21, 2012

Title of Signing Officer
United States District Court